## ZIGLER v
## BALTIMORE & OHIO RD CO ét

Ohio Appeals, 9th Dist, Medina Co

No 136. Decided June 19, 1936

G. W. Smith, Medina, for plaintiff.

John A. Weber, Medina, for defendant The Baltimore & Ohio Railroad Co.

N. H. McClure, Medina, for defendant Village of Seville.

## OPINION

By FUNK, PJ.

Plaintiff commenced this action in the Common Pleas Court of Medina County in July, 1934, against the Baltimore & Ohio Railroad Co. and the Village of Seville, asking for a decree declaring null and void a certain ordinance enacted by the council of the village of Seville, by which the Baltimore & Ohio Railroad Co. was granted the right and privilege of occupying a certain part of Water Street in said village, extending from the north line of Spring Street to the southerly end of said Water Street, and asking also for a mandatory injunction to compel said railroad company to remove its tracks and equipment, and all ballast above the 1928 grade, from said street, and to compel it to put said street in proper condition for public travel at its

full width, and for an order restraining said railroad company from using said street for railroad purposes.

The cause was tried below upon the second amended petition, the separate answers of said railroad company and said village of Scville, and the separate replies thereto.

The court below found for defendants and dismissed the petition at plaintiff's costs. The case is in this court on appeal from that judgment, and has been heard upon the same pleadings as in the court below and upon a transcript of the evidence and exhibits used in the court below, together with such additional testimony taken by deposition, and additional exhibits offered subject to their competency as evidence. It should be said that in said depositions there is much incompetent, irrelevant and extravagantly cumulative evidence.

The material facts are that the original plat of the village of Seville was surveyed and recorded in 1836 (plaintiff's exhibit G-1); that said village was incorporated in 1853 (plaintiff's exhibit B); that both said original plat and the recorded survey and plat showing the corporate limits of said village (plaintiff's exhibit A) shows that Water Street extended south only to the southerly line of lots 48 and 49 in said village, and which is approximately 150 feet south of Market Street; that Main Street runs in an easterly and westerly direction; that Water Street runs in a northerly and southerly direction and extends just a little over three blocks north of Main Street; that Market Street is the first and only street south of Main Street, which runs easterly and westerly and is about 300 feet south of Main Street; that the only lots fronting on Water Street south of Market Street are lots 46, 47 and 48 or the westerly side, and lots 49, 50 and 51 on the easterly side thereof; that plaintiff individually now owns said three lots on said westerly side, together with some acreage south of them and to the west of the B. & O. Railroad Co. right of way, and that said railroad company owns said three lots on said easterly side of Water Street; that at the time said village was incorporated and Henry Hosmer owned all the acreage extending from the south line of said original plat of Seville to what was known as Mill road, which ran easterly and westerly some considerable distance south of the southerly corporation line of said village, and which acreage also extended from far beyond Chippewa creek on the west to far beyond what is now

Milton Street on the east; that said incorporation plat shows that Milton Street extended from Main Street southeasterly through said Henry Hosmer lands to said Mill road; that in May, 1854, said Henry Hosmer and wife conveyed to the Cleveland Medina & Tuscarawas Railroad Co., its successors and assigns forever, "a right of way one hundred feet in width, that is to say, fifty feet wide on each side of the center line of their said road as the same is finally located and established across the following described land in Gulliford township * * * in the County of Medina and state of Ohio, being the south part of lot number eleven (11) in said township, commencing on the south of lots Nos. 43 and 49 in the town plat of Seville and then extending south the whole length of said railroad as located across said south part of Lot No. 11," and which would be at least to said Mill road; that said deed recites the consideration of $500 and "the benefits to be derived therefrom" when said railroad is constructed, a copy of which conveyance is plaintiff's exhibit G-11; that on that same day said Henry Hosmer and wife also conveyed, by general warranty deed, to said railroad company "and assigns forever" 50 feet on each side of said right of way, commencing on the south line of said lots 48 and 49 and extending south 1000 feet, which deed recites the consideration of $1 and that said land "be used and occupied by said company for depot grounds," a copy of which conveyance is plaintiff's exhibit G-10; that soon thereafter some grading was done to make a foundation for a railroad but that a track was not constructed until 1872 and that said right of way was used by the public in going to and from said Mill road and a grist mill located on Mill road adjacent to the westerly side of said right of way; that the Lake Shore & Tuscarawas Valley Railroad Co. in 1871 became the owner of all the property and rights of said Cleveland, Medina & Tuscarawas Railroad Co., including those which were conveyed to it by said Henry Hosmer, and that said Lake Shore & Tuscarawas Valley Railroad Co. actually constructed said railroad through said village of Seville in 1872; that in 1871 an ordinance, a copy of which is defendant's exhibit 2, was duly passed by the officers of said village granting a franchise to said Lake Shore & Tuscarawas Valley Railway Co. to construct and operate "during its corporate existence" a single—or double-track railroad on said Water Street from the north line of Spring Street, which is the first east and west street north

of Main Street, to the south line of Market Street; that in 1875 the Cleveland, Tuscarawas Valley & Wheeling Railway Co. acquired the property and rights of the Lake Shore & Tuscarawas Valley Railroad Co.; that in 1880 the property and rights of said railroad company were sold and conveyed to Edwin R. Perkins and by him conveyed to one Chamberlain and others, who in turn conveyed it to the Cleveland, Lorain & Wheeling Railroad Co. by deed dated March 13, 1883, and which company conveyed said property and rights to the Baltimore & Ohio Railroad Co. in 1915 (see defendant's exhibit 25); and that said defendant is now the owner thereof.

It is conceded by all parties that said village did not grant any franchise to any of the other companies which or persons who acquired title to the property and rights of said Lake Shore & Tuscarawas Valley R. R. Co. until in November, 1933, and that it must have been assumed or admitted that the rights of the Lake Shore & T. V. R. R. Co. under said franchise passed with its other assets to the respective successive owners of said railroad property; and that in November, 1933, the council of said village of Seville duly passed an ordinance granting to said B. & O. Railroad Co. a franchise to "reconstruct, maintain and operate its steam railway" in and over Water Street, from the northerly line of Spring Street to the southerly end thereof, for a period of 25 years, a copy of which ordinance is in evidence marked plaintiff's exhibit E-1.

The pleadings, the evidence, and the briefs of counsel, present two principal questions for consideration: first, Does Water Street extend south to the corporation line, or only to the south line of said lots 48 and 49? and, Second, Is said franchise ordinance which was passed in November, 1933, invalid?—which questions we will consider in the order mentioned.

First. Plaintiff claims that said Water Street extends south from Main Street and across Market Street to the southerly corporation line of said village, which is approximately 1000 feet south of the south line of said lots 48 and 49, where it would become a road and continues a short distance to said Mill road.

Defendants both claim that said Water Street extends south from Main Street, only to the south line of said lots 48 and 49 in said village.

It must be borne in mind that this is a taxpayer's suit, and that accordingly, if Water Street does not extend south of lots 48 and 49 in said village, then this action

cannot affect said railroad south of said lots 48 and 49.

It should also be observed that both the original plat of said village and the recorded survey and plat showing the corporation limits thereof (plaintiff's exhibits A and G-1), show that Water Street ex.ended only to the south line of said lots 48 and 49.

However, plaintiff claims that his exhibit G-2, which is a copy of an allotment in said village which said Henry Hosmer, with others, caused to be surveyed in 1859, and the original plat of which they signed, acknowledged and filed for record in January, 1860, shows that Water Street was extended south to the corporation line and was thus duly dedicated by the owners of said land and accepted by said village as an extension of Water Street south of said lots 48 and 49.

We cannot agree with this contention. It is plain from the face of this plat that no such intention can be drawn therefrom. This plat clearly shows that it was an allotment in said village which subdivided into lots land which fronted on streets other than Water Street, and that it had nothing whatever to do with Water Street or land or lots adjoining Water Street, and cannot be regarded as any evidence of a dedication of an extension of Water Street south of lots 48 and 49.

It is also apparent from said plat itself (plaintiff's exhibit G-2), and especially when it is compared with the original plat of Seville made in 1836 and the plat showing the incorporation of said village made in 1853, that the part of said plat which shows Water Street was intended to show only the relative location of said 1859 allotment to the original plat of Seville, as it will be noted that. the lines which indicate the location of Water Street were only intended to show the course of the street, that they have no measurements and have no fixed place of beginning or ending, and that said plat does not even show the corporate boundary lines of said village; so that said plat cannot and does not show that it extended Water Street to the corporation boundary, or to any other point.

Counsel for plaintiff further claims that, although the deed from Henry Hosmer to the railroad company for the right of way (plaintiff's exhibit G-11) recited a consideration of $500 and other considerations, and his deed of same date for 50 feet on each side of said right of way (plaintiff's exhibit G-10) recited a consideration of $1, they were both in reality a gift, and that

under §8762, GC, such gifts become void if the railroad is not constructed within a period of five years; and that as said railroad was not constructed until 1872, said deeds, plaintiff's exhibits G-10 and G-11, for right of way and depot purposes, became void and of no effect at the expiration of five years from the date of said two deeds, which were executed, delivered and recorded in May, 1854.

Counsel for plaintiff attempted to prove that said Henry Hosmer recognized said 5-year limitation on gifts to railroads by plaintiff's exhibits G-4, G-5 and G-6, which exhibits are copies of three deeds, to three of his daughters, given in 1855 for lands adjoining said railroad right of way, and in which three deeds said right of way was made one of the boundary lines of the property conveyed, and which deeds said counsel says he introduced in evidence for the sole purpose of showing that said Henry Hosmer recognized said right of way at that time, as it was within said 5-year limitation.

Plaintiff further claims that, as said Henry Hosmer, along with others, signed, acknowledged and filed for record the plat of said 1859 allotment only a few months more than five years from the time of the execution of said right of way and depot deeds (plaintiff's exhibits G-10 and G-11), his said acts and conduct are evidence to show that he again recognized said 5-year limitation statute, and that by his signing, acknowledging and filing said allotment for record he canceled said right of way and depot deeds.

Plaintiff also introduced in evidence for that same purpose, and with that same claim, a deed dated February 18, 1861, by which said Henry Hosmer and wife conveyed to their daughter, "Julia F. Taylor, as trustee for the heirs of said Julia F. Taylor," the lands covered by said right of way deed and which included the land that is now claimed to be Water Street extended south to the corporation line of said village.

The absurdity of this contention as to said allotment and deeds is apparent, not only from the fact that said allotment had nothing to do with Water Street or land adjoining it, and the fact that said Henry Hosmer and his children and heirs permitted said railroad and depot to be constructed in 1872 and operated ever since that time without ever making any complaint concerning its construction and operation over said right of way and depot lands, but also from the further fact that

there was no such 5-year provision in the Ohio statutes prior to the enactment of §3282 of the Revised Statutes of 1880 (now §8762, GC). It is hardly probable that said Henry Hosmer joined in said 1859 allotment and the deed to his said daughter in 1861 in contemplation of a statute about twenty years before there was any such provision in our statutes.

Plaintiff further claims that, in addition to his claim for said 1859 allotment, the other evidence alone shows a common law dedication and acceptance (that is, a dedication by prescription) of an extension of said Water Street to the south corporation line of said village.

It is clear from the evidence that, if there ever was any dedication of land for the extension of Water Street from the south line of said lots 48 and 49 to the south corporation line of said village, it must have been so dedicated by said Henry Hosmer, as there is no claim of any such dedication by any of his children or any other owner of said land.

While there is evidence of use by the public for some years over a portion of what would be Water Street if it had been extended south from said lots 48 and 49 to said Mill road, and especially after there had been some grading done between 1854 and 1860 for said railroad, there is absolutely no evidence of any intention on the part of said Henry Hosmer, the owner of said land, to dedicate the land for an extension of Water Street to the south corporation line of said street. On the contrary all the acts of said Henry Hosmer, as disclosed by the evidence, indicate a directly opposite intention. His granting, to the Cleveland, Medina & Tuscarawas Railroad Co., in 1854, a strip of land 100 feet wide, beginning on the south line of said lots 48 and 49, and extending south through his farm land to the south line of lot No. 11, which is at least to said Mill road, and at the same time deeding to said railroad company, for depot purposes, an additional 50 feet on each side of said right of way, and which conveyances more than cover all the land claimed for said Water Street extension, and his deeds to his three daughters, in 1855, to-wit, plaintiff's exhibits G-4, G-5 and G-7, in which said right of way is made one of the boundary lines for the land conveyed, and also his deed to his daughter Julia F. Taylor, as trustee for her heirs, in 1861 (being plaintiff's exhibit G-8), all show an intention not to dedicate rather than to dedicate said lands for street purposes.

Furthermore, there is no evidence that said village ever did anything to show that it in any way accepted or recognized Water Street as having been extended south of the south line of said lots 48 and 49.

The rule in this state is well settled that the mere use of land by the public, and acquiescence therein by the owner, will not operate to establish a public street in a municipality, in the absence of acceptance by the proper officials; and this is especially so where such use and acquiescence are under circumstances which negative an intention that such result should ensue.

Lessee of Village of Fulton v Mehrenfeld, 8 Oh St 440.

Railroad Co. v Village of Roseville, 76 Oh St 108.

We therefore hold that there was no statutory or common law dedication of land for Water Street south of the south line of said lots 48 and 49, that consequently Water Street does not extend sou'h of said lots, and that, this being a taxpayer's suit, this action cannot have any bearing on the rights of said defendant railroad company to its lands and right of way south of said lots 48 and 49.

Second. Plaintiff contends that said ordinance passed in November, 1933, granting said franchise to the defendant railroad company, is invalid, for the reason that its terms constitute an abuse of the corporate powers of said village in the following respects: that they do not require said defendant company to put plank or other material between the rails of its tracks so that the full width of the street may be used by the public for vehicular travel; that they permit said defendant company to use too great a part of the street between Market Street and the south line of said lots 48 and 49; and that they permit said defendant company to occupy practically the whole of what is claimed to be Water Street south of said lots 48 and 49, in violation of §§8762 and 8766, GC; and plaintiff further claims that said franchise ordinance is invalid because it fails to comply with that part of §7479, GC, which provides that "The type of construction used by such company shall be approved in the first instance ' ' * by the engineer of a municipality." Plaintiff also claims that the ordinance was irregularly passed.

Counsel for both defendants, of course, claim that said franchise ordinance was duly and regularly passed, and that it is valid.

(a) Does the fact that said 1933 franchise ordinance does not contain a specific provision that "The type of construction used by such company shall be approved in the first instance * * * by the engineer of" the municipality, render said ordinance invalid?

We think not, under the facts and circumstances of this case.

It is apparent from the language "in the first instance" that this part of said section has application only to situations where the franchise is being granted for the original construction, and that it does not apply to the granting of a renewal franchise to a railroad already fully constructed and operating, as in the instant case, where the railroad had been constructed "in the first instance" many years before under a former franchise ordinance.

Furthermore, since said ordinance complies with the remaining requirements of said §7479 GC and provides that "When required by the proper authorities in charge of such street, the company shall make such changes in its grade and method of construction as shall be necessary to conform to any improvement thereafter made of such street by the municipality. The type of construction used by the company in making any such change to be approved by the engineer of the municipality," said ordinance does substantially comply with the provisions abou, which plaintiff complains, as the municipality may require such changes as it may desire and thus control the type of construction.

(b) Do the rights and privileges granted the defendant railroad company by said ordinance constitute an abuse of the corporate powers of said village?

As to the complaint that said ordinance does not require the defendant company to put plank or other material between its tracks on Water Street, and that said ordinance permits said company to maintain a loading pla_form, a row of posts and a signal light on the east side of its tracks south of Market Street, and also to maintain a switch track and equipment to operate it on Water Street south of Market Street.

It should be observed that said village has never had to exceed 800 to 900 population, that said Water Street south of Main Street is not paved and is only a cinder-surfaced street, and that, while said 1933 ordinance does not require said railroad company to put material between the tracks the whole length of the occupied portion of said street, said 1933 ordinance

does require said railroad to do so at its intersection with Main and Market Streets and to maintain proper crossings and lights at said two street intersections.

It should be further noted that said 1933 ordinance provides for only a single track north of Market Street, and required said railroad company to remove the switch and signal light from between Main and Market Streets to south of Market Street, while the ordinance of 1871 permitted a double track over that portion of Market Street; that under said 1933 ordinance said railroad company is required to maintain. Water Street between Main and Market Streets in a suitable condition, at a specified grade over the entire surface of the street outside the space occupied by its track and by the sidewalks, and to save said village harmless from any loss or damages which may arise from any negligence of said railroad company, and that said company is also required to maintain a suitable drainage system on that part of Water Street; that said traveled portion of said Water Street between Main and Market Streets is wide enough for two trucks to pass each other on either side of the track, which is in about the center of said Water Street between the south line of Market Street and Spring Street; also that under said 1933 ordinance said railroad company substantially increased the distance between plaintiff's property line on the west side of Water Street and the west side of its tracks south of Market Street, so that at present it is 25 feet from said property line on the west side of Water Street to the west end of the ties of the said railroad company's most westerly track at the south line of said lot 48, and that this distance gradually increases to 33 feet at a point about 15 feet south of Market Street, which gives sufficient space for ingress and egress from plaintiff's lands, and which are the only lands that adjoin Water Street south of Market Street. Moreover, plaintiff has ample access to his said lots and lands from his Market Street entrance thereto.

The only complaints of congestion of traffic on said part of Water Street, i.e., between Main and Market Streets, have reference to days on which public sales are held on plaintiff's property, when those attending such sales park their automobiles not only on Water Street but on other streets in that vicinity; the evidence shows that on such days the situation is no different than it is in other communities under similar circumstances, and on many streets in many municipalities during business hours generally. Moreover, if there

is any real need or demand for relief from such congestion, the village officials could easily correct much of said congestion by prohibiting the parking of automobiles on that part of said street during certain hours.

The fact that plaintiff has lived in Seville for many years and was at one time its mayor and was for some years a member of the village council, and that although said railroad has occupied said street for over 60 years, no complaint was ever made by anyone, even by plaintiff, until after he purchased said lots 46, 47 and 48, and land adjoining them on the south about 1927, is quite potent evidence that the railroad in Water Street has not materially interfered with the use of said street by the public.

In this connection it may be observed that Water Street south of Market Street is a dead-end street, and as the railroad company owns all the lots on the east side of Water Street south of Market Street and its right of way adjoins the whole of the south end of Water Street, there is no occasion for the public to travel over the easterly part of that part of said street except for railroad purposes, so that the fact that the railroad company occupies a part of the easterly part of Water Street south of Market Street can be of no inconvenience to the public.

Concerning Water Street north of Main Street, the evidence shows Hubbard Creek crosses Water Street between Main and Spring Streets, and that the village authorities have not constructed any vehicular or foot bridge across said creek and have not graded and opened said part of said street for public travel. It is surely no fault of said railroad company that the village authorities have not graded said part of the street graded and drained, the over said creek, as there is no reason why Water Street between Main and Spring Streets could not be graded and used the same as it is between Main and Market Streets if the village would construct a bridge across Hubbard Creek and have that part of the street graded and drained, the same as it is south of said Main Street.

It is apparent from the evidence that the village authorities do not consider the use to be derived from that part of Water Street, to-wit, one block from Main to Spring Streets, is such as would justify the expenditure of an amount sufficient to construct a vehicular and foot bridge over Hubbard Creek and keep such bridge in repair and the street properly graded.

Plaintiff's claim that said franchise ord-

104

inance is invalid because it permits the defendant railroad company to exclusively occupy the land claimed by plaintiff to be Water Street extended south of said lots 48 and 49, is definitely disposed of by the finding hereinbefore that Water Street was never extended south of said lots 48 and 49, and thus said claim has no bearing on the validity of said ordinance.

Said ordinance further provides that said railroad company shall accept said ordinance in writing and file the same with the village clerk within 30 days after its passage, and that all work and changes in its tracks provided for in the ordinance shall be completed by said railroad company within 60 days of the effective date of said ordinance; all of which was duly complied with by said railroad company, thereby making said ordinance a duly executed contract between said village and said railroad company.

As to other claims and arguments of counsel for plaintiff concerning which we have made no comment, suffice it to say that we have considered all of them and find no merit in any of them.

We therefore hold that the council of the village of Seville did not exceed its authority in the enactment of the ordinance granting the Baltimore & Ohio Railroad Company the privilege of a partial occupancy of a part of Water Street in said village, that the terms of said ordinance do not violate or unreasonably restrict the right of the public to the use of said street, and that said street extends only to the south line of said lots 48 and 49.

It is therefore ordered that the prayer of plaintiff's petition be denied, and that the petition be dismissed, at the costs of plaintiff.

A decree may be entered in accordance with this opinion.

STEVENS and WASHBURN, JJ, concur in judgment.